UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JACK H. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:09-CV-126 |
| ) | (VARLAN /SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 15]. Plaintiff Jack H. Carter ("Plaintiff") seeks judicial review of the decision of Administrative Law Judge ("ALJ") George L. Evans, III, denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 1, 2005, Plaintiff filed an application for supplemental security income ("SSI") benefits. [Tr. 12]. On November 2, 2005, Plaintiff filed an application for disability insurance benefits ("DIB"). [Tr. 12]. On both applications, Plaintiff alleged a period of disability which began on August 12, 2005. [Tr. 12]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On October 16, 2007, a hearing was held before ALJ George L. Evans, III, to review determination of Plaintiff's claim. [Tr. 361-402]. On December 11, 2007, the ALJ found that Plaintiff was not under a disability from August 12, 2005,

through the date of the decision. [Tr. 9-18]. The Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 2-4]. Plaintiff now seeks judicial review of the ALJ's decision.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009

2. The claimant has not engaged in substantial gainful activity since August 12, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: history of cervical spine fusion surgery and history of cervical disk fracture (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 23, 1968 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.964).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964)

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled,"

> whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-18].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner

pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by

substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," Wilson, 378 F.3d at 545, and the Court therefore "cannot excuse the denial of a mandatory procedural protection...simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination, id. at 546. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and "will not result in reversible error *absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses*." Wilson, 378 F.3d at 546-47 (emphasis added) (quoting Connor v. United States Civil Serv. Comm'n, 721 F.2d 1054, 1056 (6th Cir. 1983)). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination.

6

Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    ANALYSIS**

On appeal, Plaintiff argues that substantial evidence did not support the ALJ's determination that he was not under a disability. Plaintiff contends that the ALJ improperly determined his physical residual functional capacity ("RFC"). [Doc. 12 at 4-6]. Plaintiff argues that the ALJ erred in making this determination by failing to give appropriate weight to the opinion [Tr. 296-299] of Dr. Robert Q. Ingraham, Jr., M.D. Plaintiff argues that this error caused the ALJ to make an RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that he has the RFC to perform sedentary work without any additional restrictions was not supported by substantial evidence.

Plaintiff also contends that the ALJ's finding that a significant number of sedentary jobs suitable for him to perform exist in the national economy was not supported by substantial evidence. Plaintiff argues that the ALJ's finding was "conclusory" as it was made "in the absence of vocational expert testimony or any other supportive evidence." [Doc. 12 at 7]. Further, Plaintiff argues that "the ALJ reached his decision without listing any specific sedentary jobs that the Plaintiff's education, transferable skills, and physical restraints might allow him to perform." [Doc. 12 at 8]. Plaintiff asserts that the Commissioner did not carry his burden of proving that "other work

7

exists in the national economy that accommodates his residual functional capacity *and* vocational factors." Walters, 127 F.3d at 529 (emphasis added). Accordingly, Plaintiff maintains that there are no jobs suitable for him to perform available in the national economy, and that he is therefore unable to obtain gainful employment. Thus, Plaintiff concludes that he is under a disability and entitled to DIB and SSI payments.

The Commissioner, in response, contends that the ALJ considered the entire record, and that substantial evidence supported his determinations that (1) Plaintiff had the RFC to perform sedentary work without additional restrictions, and (2) a significant number of sedentary jobs suitable for Plaintiff to perform exist in the national economy. [Doc. 16 at 1-2]. The Commissioner argues that the ALJ properly considered and weighed all of the opinion evidence in the record, including the opinion of Dr. Ingraham, when determining Plaintiff's RFC. [Doc. 16 at 12-15]. The Commissioner also argues that because Plaintiff's vocational characteristics exactly matched those listed in a rule in the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2, the existence of a significant number of jobs in the national economy that Plaintiff could perform was established as a matter of law, and there was no need for testimony from a vocational expert. [Doc. 16 at 15-16]. The Commissioner concludes that substantial evidence supported the ALJ's decision that Plaintiff was able to perform work that exists in the national economy, and that he was therefore not under a disability and not entitled to DIB and SSI payments.

### A. The ALJ's determination of Plaintiff's RFC was supported by substantial evidence

The ALJ found that Plaintiff had the RFC "to perform the full range of sedentary work." [Tr.

15]. Plaintiff contends that this finding was incorrect and unsupported by the record.[2] Plaintiff argues that the ALJ determined his physical RFC "without any mention or regard for" the opinion [Tr. 296-99] of one of his treating physicians, Dr. Robert Q. Ingraham, Jr., M.D. [Doc. 12 at 4]. The Commissioner argues in response that the ALJ in fact "properly weighed Dr. Ingraham's opinion in context," [Doc. 16 at 12], and that he specifically "addressed Dr. Ingraham's final assessment [Tr. 296] of Plaintiff in February 2006" in his narrative decision.

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502). An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling

---

[2] Though it is not completely clear from his memorandum, Plaintiff appears to argue that the record indicates that he in fact had the RFC to perform sedentary work with some additional restrictions, *not* the "full range" of sedentary work. Plaintiff does not specify what additional restrictions he believes were warranted by the record. Plaintiff also does not specifically point to anything in the record besides one phrase in Dr. Ingraham's notes that indicated that he could not perform the full range of sedentary work.

9

weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's non-controlling opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the record contains four treatment notes dictated by Dr. Ingraham and dated September 27, 2005; October 27, 2005; November 29, 2005; and February 21, 2006. [Tr. 296-99]. Plaintiff argues that the ALJ "simply ignore[d]" Dr. Ingraham's opinions recorded in the third note [Tr. 297], dated November 29, 2005. [Doc. 12 at 5]. In that note, Dr. Ingraham stated the following:

> "Mr. Carter returns again today. He is stable. He is still having a lot of neck pain and it appears where the anterior cervical discectomy and arthrodesis was done, it is well healed now. It also appears that the fracture at C2 is well healed. He just has chronic pain in his neck that does not seem to be motion-related. He does have a lot of tingling, numbness and burning down into his arms. He says it feels like electric shocks and when he does things with his hands it quickly diminishes but he does not have very good hand function. I think this

> is related to the cord contusion he had and myleopathic changes in his spinal cord at C2.
>
> I would like for him to see the physiatrists at Patricia Neal Rehab Center to see if there is anything that can be done to maximize his hand function. As far as his job of packing guitars, lifting and loading which entails manual labor, I think that he is not going to be able to perform that for the rest of his life. I think he can get back to doing that for an hour at a time but anything beyond that leads to him having dysfunction of his hands. I have told this to him. I do not know if he is going to apply for disability or try to work a non-labor job; anything that requires hand dexterity is going to greatly limit him."

[Tr. 297]

Contrary to Plaintiff's assertion, the ALJ *did* address Dr. Ingraham's treatment notes in his narrative decision. The ALJ stated as follows:

> "A cervical spine MRI revealed a fracture at C2, for which Dr. Ingraham, his treating neurosurgeon, prescribed wearing of a cervical collar. *In November 2005, the physician indicated that the claimant may not be able to return to his job of packing guitars, lifting and loading, which entailed manual labor, but that he could work a non-labor job.* In February 2006, during Dr. Ingraham's last office visit with the claimant, the physician noted the claimant's C-2 fracture appeared to be well-healed and that flexion and extension films showed ligamentous laxity at C1-2, which was **very mild** and measured out at about 2 millimeters, which the physician further noted was **insignificant**."

[Tr.17] (bold emphasis original, italics added) (citing [Tr. 297-98]).

It is clear from the italicized sentence above that the ALJ specifically mentioned Dr. Ingraham's third treatment note of November 29, 2005, that Plaintiff alleges was "simply ignore[d]." It is also clear that the ALJ considered Dr. Ingraham's opinions as having been provided by a treating source. Based on the ALJ's accurate recapitulation of Dr. Ingraham's treatment notes as a whole, the Court finds that the ALJ *did* consider Dr. Ingraham's medical opinions when

11

determining Plaintiff's physical RFC.

The Court turns next to Plaintiff's assertion that "the ALJ neither [gave] controlling weight to Dr. Ingraham's medical opinions, nor [did] he give good reason for discounting them." [Doc. 12 at 5]. The ALJ did not expressly state whether he gave Dr. Ingraham's opinions controlling weight. He also did not expressly state "good reasons" justifying the weight that he actually gave to Dr. Ingraham's opinion when reaching his decision. See 20 C.F.R. § 404.1527(d)(2). Plaintiff is correct that these failures were procedural errors. But for the following reasons, the Court finds that they were harmless errors do not warrant remand.[3]

First, it is not clear to the Court that the ALJ actually chose not to give controlling weight to Dr. Ingraham's opinions. The ALJ expressly recognized that Dr. Ingraham was a treating medical source, and he never stated that Dr. Ingraham's opinions were rejected, discounted, entitled to "reduced" or "little" weight, undermined or unsupported by the record, or disfavored versus other medical opinions. The absence of any such statement or any mention of the six factors used to analyze the weight to which a non-controlling medical opinion is entitled, see 20 C.F.R. § 404.1527(d), probably indicates that the ALJ in fact gave Dr. Ingraham's opinion controlling weight.

Second, as pointed out in note 1, *supra*, Plaintiff has not clearly explained how Dr. Ingraham's treatment notes contradict, or fail to support, the ALJ's RFC finding. Plaintiff focuses on Dr. Ingraham's statement that "anything that requires hand dexterity is going to greatly limit him." [Doc. 12 at 5] (citing [Tr. 297]). Presumably, Plaintiff believes that this one phrase in the

---

[3] Plaintiff himself recognizes that "failure to follow this procedural rule [that an ALJ must either give a treating physician's opinion controlling weight or provide good reasons for discounting it] is a reversible error *unless the error is harmless*." [Doc. 12 at 5] (emphasis added) (citing Wilson, 378 F.3d at 545). Plaintiff makes no effort to explain why the ALJ's procedural errors in this case were not harmless.

record should have compelled the ALJ to find that he has the RFC to perform sedentary work with the additional restriction that he is precluded from jobs that require hand dexterity.[4] Plaintiff appears to argue that because the ALJ did not find this additional restriction, he failed to give controlling weight to Dr. Ingraham's opinion. The Court disagrees.

In the context of an RFC determination, Dr. Ingraham's opinion in his third treatment note of November 29, 2005, is somewhat ambiguous and subject to interpretation. The phrase on which Plaintiff focuses–"anything that requires hand dexterity is going to greatly limit him"–was not considered by the ALJ in isolation. Dr. Ingraham stated as follows:

> "As far as his job of packing guitars, lifting and loading which entails manual labor, I think that he is not going to be able to perform that for the rest of his life. I think he can get back to doing that for an hour at a time but anything beyond that leads to him having dysfunction of his hands. I have told this to him. I do not know if he is going to apply for disability or try to work a non-labor job; anything that requires hand dexterity is going to greatly limit him."

[Tr. 297].

The Court finds that Dr. Ingraham's statement, taken as a whole, does not contradict or conflict with the ALJ's RFC finding. Dr. Ingraham did not opine that Plaintiff was completely precluded from all work that requires hand dexterity. And he stated that Plaintiff could engage in "packing guitars, lifting and loading which entails manual labor" for one hour at a time. It was not unreasonable for the ALJ to decide–based upon the above statement as a whole–that Dr. Ingraham's opinion was not definitive enough to compel a finding of additional restrictions on Plaintiff's ability to work beyond a general restriction to sedentary work. Sedentary work is defined as work that

---

[4] Plaintiff fails to suggest in his memorandum what he believes the correct RFC finding should have been. The Court has interpreted his argument to be as it is stated here. See n.1, *supra*.

"involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). It was reasonable for the ALJ to construe Dr. Ingraham's treatment notes as an opinion that Plaintiff was capable of performing this type of work without further specific restrictions. In short, even if the ALJ had given Dr. Ingraham's opinions controlling weight as desired by Plaintiff–and it is not clear that the ALJ in fact failed to do this–a finding that Plaintiff had the RFC to perform the full range of sedentary work would still have been reasonable and supported by substantial evidence.

The Court notes that it also would have been reasonable for the ALJ to determine based upon Dr. Ingraham's treatment notes that Plaintiff was precluded from performing work that requires hand dexterity. But Dr. Ingraham's treatment notes simply were not definitive regarding work from which he believed Plaintiff was precluded, and they did not compel the ALJ to make an RFC finding that included a specific dexterity restriction. The ALJ interpreted Dr. Ingraham's notes inside of the "zone of choice within which the Commissioner can act, without the fear of court interference." See Buxton, 246 F.3d at 773. Accordingly, the Court concludes that the ALJ's finding that Plaintiff had the RFC to perform was supported by substantial evidence.

B. **The ALJ's finding that there are jobs that exist in significant numbers that Plaintiff can perform was supported by application of the Medical-Vocational Guidelines**

After determining that Plaintiff had the RFC to perform sedentary work, the ALJ found that "considering [his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." [Tr. 18]. The ALJ stated that he made this finding by applying Medical-Vocational Guidelines Rule 201.25,

14

20 C.F.R. § 404, Subpt. P, App. 2. [Tr. 18]. Plaintiff argues that the ALJ's finding was "conclusory" and not supported by substantial evidence because it was reached "without the use of vocational expert testimony or any other evidentiary findings." [Doc. 12 at 6]. The Commissioner responds that vocational expert testimony and specific evidentiary findings were unnecessary to support the ALJ's finding. [Doc. 16 at 15]. The Commissioner argues that the existence of sedentary work in the national economy suitable for Plaintiff to perform was established as a matter of law by application of the Medical-Vocational Guidelines. [Doc. 16 at 15-16]. The Commissioner asserts that Plaintiff's vocational characteristics exactly matched those listed in Medical-Vocational Guidelines Rule 201.25, and that the Rule therefore dictated that a significant number of jobs suitable for Plaintiff existed in the national economy. [Doc. 16 at 16]. The Commissioner concludes that the applicability of Rule 201.25 eliminated the need for vocational expert testimony or evidentiary findings, and compelled the ALJ to find that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [Doc. 16 at 16].

At step four of the Social Security Administration's five-step disability determination analysis, the Commissioner must determine whether a claimant is able to perform his past relevant work. 20 C.F.R. § 404.1520. If the Commissioner determines that the claimant cannot perform past relevant work, he must proceed to step five and determine whether jobs exist in the national economy that accommodate the claimant's residual functional capacity and vocational factors. Id.; 20 C.F.R. § 404.1560(c)(1). If such jobs exist in significant numbers in the national economy, then the claimant is not disabled. Id. The Commissioner bears the burden of proving the existence of a significant numbers of such jobs. Walters, 127 F.3d at 529; 20 C.F.R. § 404.1560(c)(2) (stating that the Social Security Administration is "responsible for providing evidence that demonstrates that

other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors").

The Commissioner can prove the existence of a significant number of jobs suitable for a claimant in two ways. First, the Commissioner can provide substantial evidence that suitable jobs exist with testimony from a vocational expert. See O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir. 1978). Second, if the limitations and restrictions imposed by a claimant's impairments are only exertional limitations *and* the claimant's specific vocational profile is listed in a rule contained in the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2, then the Commissioner can directly apply that rule to establish that suitable jobs exist for the claimant. 20 C.F.R. § 404.1569a(b); 20 C.F.R. § 404, Subpt. P., App. 2 § 200.00(b) ("The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the number of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) . . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established."); Heckler v. Campbell, 461 U.S. 458, 461 (1986) (explaining that the Medical-Vocational Guidelines relieve "the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy"); Wright v. Massanari, 321 F.3d 611, 615 (6th Cir. 2003) ("Where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled.").

In this case, the ALJ found that Plaintiff's impairments imposed only exertional limitations on his ability to work. The ALJ found that Plaintiff had the RFC to perform the full range of

sedentary work, and, as discussed *supra* in part A, that finding was supported by substantial evidence. The ALJ was therefore entitled to rely on Table No. 1 of the Medical-Vocational Guidelines[5] to establish the existence of jobs suitable for Plaintiff *if* Plaintiff's specific vocational profile was listed in a rule on the Table. The ALJ found that Plaintiff's vocational profile exactly matched the vocational characteristics listed in Rule 201.25. [Tr. 18]. Those characteristics are an age of between 18 and 44, "limited or less" education, and non-transferable skills from previous work experience. 20 C.F.R. § 404, Subpt. P., App. 2, § 201.25. Plaintiff does not challenge the ALJ's determination that Rule 201.25 accurately describes his vocational characteristics. Accordingly, the Court finds that the ALJ's decision to rely on Rule 201.25 to determine whether a significant number of suitable jobs existed for Plaintiff was supported by substantial evidence.

Rule 201.25 dictates that a claimant with the RFC to perform sedentary work who is between the ages of 18 and 44, has "limited or less" education, and has non-transferable skills from previous work experience is not disabled because there are a significant number of jobs in the national economy that the claimant can perform. Id. The Court finds that the ALJ correctly applied Rule 201.25 in this case to conclude that the Commissioner carried his burden of establishing that suitable jobs existed for Plaintiff. Because the Medical-Vocational Guidelines dictated the resolution of step five of the sequential disability determination analysis, there was no need for the ALJ to hear vocational expert testimony or to make evidentiary findings about the availability of suitable jobs. Accordingly, Plaintiff's statement that "the ALJ reached his decision without listing any specific sedentary jobs" that his vocational characteristics allowed him to perform, [Doc. 12 at 8], is not an

---

[5] Table No. 1 lists different potential combinations of vocational characteristics for claimants with the RFC to perform sedentary work. 20 C.F.R. § 404, Subpt. P., App. 2, Tbl. 1.

allegation of reversible error.

## V.   CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[6] that Plaintiff's Motion For Judgment on the Pleadings **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).